UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| MARK P. GALLAGHER, | ) | |
| Plaintiff, | ) ) | Case  No. CV07-5688 AJW |
| v. | ) ) | MEMORANDUM OF DECISION |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

The procedural facts are summarized in the Joint Stipulation. [JS 2-4]. Plaintiff previously was found disabled due to a dependent personality disorder and was awarded benefits.  In a prior hearing decision dated May 2002, an Administrative Law Judge ("ALJ") terminated

plaintiff's benefits as of January 2000 due to medical improvement. [JS 4; Administrative Record ("AR") 23].   On March 18, 2003, the Appeals Council denied plaintiff's request for review of that decision. Plaintiff did not seek judicial review. [JS 4; AR 23].

On January 17, 2003, shortly before the Appeals Council denied his request for review of the ALJ's decision terminating benefits, plaintiff filed a new application for SSI benefits. [JS 4]. He alleged that he had been disabled since March 12, 1996 due to attention deficit and hyperactivity disorder, autism, lower back problems, and arthritis. [JS 2]. In a written hearing decision dated October 13, 2004, a second ALJ declined to reopen the prior decision terminating benefits, and he invoked the doctrine of res judicata to bar reconsideration of the issue of plaintiff's disability prior to May 30, 2002, the date of the prior final decision terminating benefits. [AR 24]. The ALJ also applied a presumption of continuing non-disability with respect to the period after May 30, 2002. [AR 24].

The ALJ found that plaintiff had severe impairments consisting of mood disorder not otherwise specified ("NOS"), personality disorder with dependent and borderline traits, depressive disorder NOS, and back pain. [AR 30].   The ALJ also determined that plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of medium work with numerous non-exertional mental functional limitations.   The ALJ further found that plaintiff's RFC did not preclude him from performing his past relevant work as a telemarketer. [AR 30]. Accordingly, the ALJ denied plaintiff's new application for SSI benefits on the ground that plaintiff was not disabled from May 30, 2002 through October 13, 2004, the date of the ALJ's decision.   The Appeals Council denied plaintiff's request for review. [AR 4-6].

Plaintiff sought judicial review of the ALJ's October 2004 decision denying benefits. [See Complaint filed April 29, 2005 in Gallagher v. Barnhart, CV 05-03119 AJW ("Gallagher I")]. On September 25, 2006, a memorandum of decision and judgment were filed in Gallagher I reversing the Commissioner's denial of benefits and remanding the case for further administrative proceedings (the "remand order"). [See AR 825-844]. The Appeals Council issued an order remanding the case to the ALJ "for further proceedings consistent with the order of the court." [AR 824].

On remand, the ALJ conducted an additional hearing and accepted additional evidence into the record. On June 7, 2007, the ALJ issued a new written hearing decision, which became the Commissioner's final decision. In that decision, the ALJ revisited and redetermined steps one through four of the sequential evaluation procedure. He reassessed plaintiff's RFC and – in contrast to his October 2004 decision – found that plaintiff could not perform his past relevant work as telemarketer. Instead, the ALJ denied benefits at step five on the ground that plaintiff's RFC did not prevent him from performing alternative work. [AR 295-296].

The parties have stipulated that the ALJ correctly summarized the medical and non-medical evidence of record in his June 2007 decision. [JS 5].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971);

1    Thomas, 278 F.3d at 954.   Substantial evidence means "such relevant
2    evidence as a reasonable mind might accept as adequate to support a
3    conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison
4    Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d
5    at 954.   The court is required to review the record as a whole, and to
6    consider evidence detracting from the decision as well as evidence
7    supporting the decision.  Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th
8    Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).
9    "Where the evidence is susceptible to more than one rational
10   interpretation, one of which supports the ALJ's decision, the ALJ's
11   conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v.
12   Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

13                                **Discussion**

14       **Scope of remand order**

15       Plaintiff contends that the ALJ's redetermination of plaintiff's
16   RFC on remand exceeded the scope of the remand order and constitutes
17   reversible legal error.

18       The United States Supreme Court has explained that when a district
19   court finds that the Commissioner

20       has committed a legal or factual error in evaluating a
21       particular claim, the district court's remand order will often
22       include detailed instructions concerning the scope of the
23       remand, the evidence to be adduced, and the legal or factual
24       issues to be addressed. . . . Deviation from the court's
25       remand order in the subsequent administrative proceedings is
26       itself legal error, subject to reversal on further judicial
27       review.

28   Sullivan v. Hudson, 490 U.S. 877, 885-886 (1989); see Ischay v.

                                      4

Barnhart, 383 F.Supp.2d 1199, 1213-1217, 1224 (C.D. Cal. 2005)(holding that under the law of the case doctrine[1] and the "broader" rule of mandate[2], the ALJ abused his discretion by going beyond the step-five issue identified in the district court's remand order, taking evidence on additional issues, "produc[ing] a third decision out of whole cloth," and denying benefits on remand at step four when the remand order did not authorize the ALJ "to disturb or revisit" his step-four determination); see also Ruiz v. Apfel, 24 F.Supp.2d 1045, 1050 (C.D. Cal. 1998)(remanding for further administrative proceedings where the remand order "makes it very plain that the remand was for a limited purpose," and there was "no basis for the ALJ to review issues that had been determined in plaintiff's favor" and not appealed).

"[T]he district court is best able to determine whether its mandate has been violated by an ALJ on remand, and that we will defer to the district court's interpretation of its own remand order." Steahr v. Apfel, 151 F.3d 1124, 1126 (8th Cir. 1998).

In Gallagher I, the ALJ found that plaintiff could lift twenty-five pounds occasionally and frequently, and that he could sit, stand, and walk for six hours in an eight-hour work day. [AR 30]. In other words,

---

[1]    "The law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." United States v. Cote,51 F.3d 178, 181 (9th Cir. 1995)(quoting Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir.1993) (internal quotations omitted)).

[2]    The rule of mandate prohibits a lower court, upon receiving the mandate of a higher court, from "vary[ing] it or examin[ing] it for any other purpose than execution"; however, "the lower court may consider and decide any matters left open by the mandate of the court." Cote, 51 F.3d at 181-182 (alterations omitted)(quoting In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 256 (1895)).

the ALJ found that plaintiff had exertional limitations restricting him to a narrowed range of medium work. In addition, the ALJ found that plaintiff could understand, remember, and carry out "short, simplistic instructions" and was "moderately impaired" in his ability to do the following: (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) interact appropriately with the general public, supervisors, coworkers, and peers; (4) respond appropriately to changes in a work setting; and (5) respond appropriately to work pressures in a usual work setting. [AR 30].

This court held that the ALJ committed reversible legal error in Gallagher I because (1) none of the ALJ's six hypothetical questions to the vocational expert accurately incorporated all of the mental and physical limitations that the ALJ included in his RFC assessment, and (2) the ALJ gave the vocational expert a confusing and ambiguous definition of the term "moderate." [See AR 840-842]. Those errors "preclude[d] the ALJ from relying on the vocational expert's testimony to support his finding that plaintiff's RFC does not preclude performance of his past relevant work as a telemarketer." [AR 842].

With respect to the appropriate remedy, the remand order stated:
Enhancement of the record would be useful in this case to determine if plaintiff can perform his past relevant work or alternative work available in the national economy *with all of the limitations found by the ALJ.* Accordingly, the Commissioner's decision is reversed, and the matter is remanded for further administrative proceedings *consistent with this memorandum of decision and a new decision.*
[AR 844 (footnote omitted)(emphasis added)]. In a footnote, this court

noted that

> [t]his disposition makes it unnecessary to consider plaintiff's additional contention that the ALJ erred in relying on the vocational expert's testimony because his RFC precludes him from meeting the Level 3 "Reasoning Development" requirement of the job of telemarketer as defined by the Dictionary of Occupational Titles ("DOT"). On remand, *the record may be augmented to clarify the basis for any inconsistency that may exist between pertinent vocational expert testimony and the DOT*.

[AR 84 (emphasis added)].

On remand, the ALJ conducted a new hearing, during which he admitted additional documentary evidence and additional testimony from plaintiff and from a new vocational expert. [AR 921-946]. In his June 2007 hearing decision, the ALJ made new findings at each step of the sequential evaluation procedure. At step two, for example, the ALJ found that plaintiff's severe impairments consisted of a mood disorder, NOS, and back arthritis, thereby eliminating two of the severe impairments found in his October 2004 decision (namely, personality disorder with dependent and borderline traits and a depressive disorder, NOS). [AR 30, 284]. At step four, the ALJ reassessed plaintiff's RFC. Giving plaintiff "the benefit of the doubt," he found that plaintiff could lift and carry no more than twenty pounds occasionally and ten pounds frequently, rather than twenty-five pounds occasionally or frequently. The ALJ again found that plaintiff could stand and walk, in total, for six hours in an eight-hour work day. Thus, the ALJ found that plaintiff

could perform light work rather than a narrowed range of medium work.[3][AR 285, 293].

In his June 2007 hearing decision, the ALJ changed plaintiff's mental RFC. He found that plaintiff could "understand simple and low level detailed instructions," but not complex or highly detailed instructions. [AR 30, 285]. The ALJ further found that plaintiff can "maintain concentration, persistence, and pace for at least 2 hour periods without need for a brief break." [AR 293, 295]. Plaintiff had "no limitation in his ability to respond appropriately to supervision, co-workers, and usual work situations, deal with changes in a routine work setting, or use judgment," eliminating the moderate limitations found by the ALJ in those areas in his October 2004 decision. [AR 30, 292].

During the hearing on remand, the ALJ posed hypothetical questions to the vocational expert, but he did not pose any hypothetical questions to the vocational expert incorporating all of the mental limitations included in his October 2004 RFC finding. Based on the vocational expert's testimony in response to his hypothetical questions, the ALJ found that alternative light, unskilled jobs exist within plaintiff's RFC, such as the job of a production assembler. [AR 295-296]. Therefore, the ALJ denied benefits at step five. [AR 296-297].

The ALJ committed legal error by deviating from the remand order. First, the remand order did not authorize the ALJ to redetermine the nature and severity of plaintiff's mental impairments at step two. By eliminating personality disorder with dependent and borderline traits

---

[3]     The remand order did not call for any revision of plaintiff's exertional capacity because, as the ALJ noted, "[t]he District Court did not take issue with the physical [RFC] assessment in the October 13, 2004 hearing decision." [AR 293].

and depressive disorder NOS as severe impairments, the ALJ laid the foundation for a more expansive mental RFC than he found in his October 2004 decision, that is, an RFC less favorable to plaintiff.

Second, the remand order directed the ALJ to clarify the definition of "moderate" for the vocational expert and to determine whether plaintiff could perform his past relevant work with "all of the limitations found by the ALJ," including the numerous moderate mental limitations the ALJ included in his October 2004 RFC assessment. Having done away with all of the "moderate" limitations in his prior RFC finding, the ALJ side-stepped that portion of the remand order.

Rather than comply with the "letter and spirit" of what plainly was a remand for a limited purpose, the ALJ revisited each step of the sequential evaluation procedure, narrowed the nature and combined severity of plaintiff's impairments, and eliminated the multiple "moderate" mental limitations he was specifically directed to consider on remand. See Ischay, 383 F.Supp.2d at 1214 ("The rule of mandate requires that, on remand, the lower court's actions must be consistent with both the letter and the spirit of the higher court's decision.")(citing Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979)(looking to whether post-mandate conduct of lower court was consistent "with either the spirit or the express terms of our decision")).

The ALJ rationalized his abandonment of the moderate mental limitations he previously assessed by observing that the Commissioner's regulations explicitly authorize use of the term "moderate" "for only two purposes in the evaluation of a mental impairment, that is, to determine if the person has a severe mental impairment and to determine if the person has a mental impairment that meets or equals a listing."

[AR 291]. He reasoned that because the Commissioner's regulations do not specifically permit using the terms "moderate" or "moderately impaired" to assess a claimant's work-related functional impairment at steps four or five, those terms have no place in an RFC finding.  The ALJ concluded that he was prohibited from including "moderate" limitations in his RFC finding, and in so doing he essentially circumvented the obligations imposed by the remand order.

The ALJ's reasoning is unpersuasive and does not justify his deviation from the remand order. Under the Commissioner's regulations, a "special technique," also referred to as the psychiatric review technique, is used to evaluate the severity of mental impairments at steps two and three of the sequential evaluation procedure. See 20 C.F.R. §§ 404.1520a, 416.920a; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4. The regulations explain that

> [u]sing the technique helps (1) Identify the need for additional evidence to determine impairment severity;(2) Consider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work; and (3) Organize and present our findings in a clear, concise, and consistent manner.

20 C.F.R. §§ 404.1520a(a)(1)-(3), 416.920a(a)(1)-(3).

The psychiatric review technique requires adjudicators to evaluate and document a claimant's symptoms, signs, and laboratory findings to determine whether one or more medically determinable mental impairments exists.  If so, the degree of functional limitation resulting from the impairment(s) is rated in four "broad functional areas" (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation), which are found in mainly in paragraph

"B" of the mental disorder listings.  <u>See, e.g.</u>, 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.02-12.04, 12.06-12.08.  For the first three of those four functional areas, impairment severity is measured using a scale of "none," "mild," "moderate," "marked," and "extreme." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).  The psychiatric review technique is used at step two to determine whether the claimant has a severe mental impairment and at step three to determine whether a severe mental impairment meets or equals a listed impairment. <u>See</u> 20 C.F.R. §§ 404.1520a(d)(1)-(2), 416.920(d)(1)-(2).  If the impairment is severe but not of listing-level severity, the claimant's mental RFC must be assessed. <u>See</u> 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3).

The RFC assessment requires more than rating a claimant's abilities in the four broad functional areas used to evaluate severity at steps two and three. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." Social Security Ruling 96-8p, 1996 WL 374184, at *3.  Examples of functions considered in assessing mental RFC are "understanding and remembering instructions and responding appropriately to supervision." SSR 96-8p, 1996 WL 374184, at *6. Unlike the severity rating at steps two and three, the regulations do not establish a particular rating scale for use in assessing a claimant's mental RFC. That, however, does not justify the negative implication relied upon by the ALJ to categorically reject use of "moderate" limitations in an RFC assessment.

To begin with, the Commissioner's own non-examining and examining physicians assessed plaintiff with "moderate" mental functional limitations. Three separate non-examining state agency physicians reviewed plaintiff's file at the Commissioner's request. Each of those

physicians completed a psychiatric review technique form and indicated that plaintiff had severe mental impairments that did not meet or equal a listing. [AR 180-194, 372-379, 347-354]. Each of those physicians then proceeded to assess plaintiff's mental RFC using a standardized Social Security Administration ("SSA") form entitled "Mental Residual Functional Capacity Assessment." That form asks the examiner to rate the claimant's RFC in twenty work-related mental functional abilities using the following rating scale: "not significantly limited," "*moderately limited,*" markedly limited," "no evidence of limitation in this category," and "not ratable on available evidence." [AR 176-178, 344-346, 369-371]. All three of the Commissioner's non-examining physicians indicated that plaintiff mental RFC included "moderate" mental functional limitations. [AR 176-178, 344-346, 369-371].

The use of a mental RFC rating scale that included "moderate" limitations was no anomaly. To the contrary, based on the scores of social security disability appeals that have come before this Court, the same rating scale is routinely used by state agency physicians who assess a claimant's mental RFC at the Commissioner's behest.[4]

---

[4]   Furthermore, as plaintiff's counsel argued orally and in writing to the ALJ in his analysis of the definition of the term "moderate," the Commissioner's regulations and case law support the proposition that "moderate" is a term that properly can be applied to assess a claimant's RFC. [See AR 867-870 (collecting cases), 923-932]. See also Thomas, 278 F.3d at 953, 955 (affirming the ALJ's finding that a claimant who had "moderate mental residual functional capacity limitations" and a "marked limitation in her ability to maintain concentration over extended periods" could perform the unskilled jobs identified by a vocational expert); Russey v. Massanari, 2001 WL 1242901, at *2, *10 (N.D. Ill 2001) (holding that the ALJ properly found that a claimant who was moderately limited in his ability to understand, remember and carry out detailed instructions, and get along with peers and coworkers without distracting them or exhibiting behavioral extremes and markedly limited in his ability to interact appropriately with the general public, could perform unskilled work).

Similarly, the Commissioner's consultative examining psychologist, Dr. Colonna, assessed plaintiff's mental RFC using a standardized SSA form entitled "Medical Source Statement of Ability To Do Work-Related Activities(Mental)." That form asks the examiner to rate a claimant's mental functional abilities in several areas using a rating scale of "none," "slight," *moderate,* "marked," and "extreme." [AR 228-230]. Dr. Colonna assessed plaintiff with "moderate" mental functional limitations, among others. [AR 228].

The ALJ explicitly relied on the assessments by Dr. Colonna and the non-examining state agency physicians to support his October 2004 RFC finding that plaintiff had several moderate mental functional limitations. [See AR 26-27]. The Commissioner defended the ALJ's October 2004 decision, and specifically his RFC finding, in court. Nothing in the record, the Commissioner's regulations, or controlling case authority supports the ALJ's conclusion that he was prohibited from including "moderate" mental functional limitations in plaintiff's RFC.[5]

The ALJ, of course, is correct that "moderate" is a qualitative term that is not precisely defined in the regulations and may require further definition when used to assess a claimant's RFC. The remand order did not fault the ALJ because he used a term that required him to undertake that task, but rather because when he did undertake it, he defined "moderate" in an inconsistent, confusing, and ambiguous manner.

---

[5]     The Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")also uses the term "moderate" as part of the rating scale in its multiaxial "Global Assessment of Function" ("GAF"). A GAF score of  of 51 through 60 signifies "moderate" symptoms, such as flat affect or occasional panic attacks, or "moderate" difficulty in social, occupational, or school functioning, such as having few friends or conflicts with peers or co-workers. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Multiaxial Assessment 30, 34 (4th ed. 1994)(revised 2002).

[See AR 841-842]. That was a problem the ALJ readily could have remedied on remand by adopting a consistent, unambiguous definition that was based on substantial evidence and not legally erroneous. See, e.g., Morales v. Apfel, 225 F.3d 310, 314 n.4, 315, 317-320 (3d Cir. 2000)(noting that the vocational expert, whose testimony the ALJ relied upon, "defined 'moderately limited' to mean the claimant is unable to perform the task up to a third of the time," and holding that the ALJ erred in adopting that testimony not because  of any problem in that term's definition, but because the ALJ improperly rejected treating source opinions concluding that the claimant was "seriously limited"); Fitts v. Massanari, 2001 WL 530275, at *2 & n.4 (S.D. Ala. 2001)(reversing and remanding where the ALJ found that the claimant had a "moderate" ("mean[ing] 'of average or medium quantity, quality, or extent'") limitation in simple grasping and fine manipulation, but the vocational expert's testimony assumed an individual who could perform either "occasional" or "frequent" simple grasping and fine manipulation).

The ALJ's unjustified failure to comply with the remand order constitutes reversible legal error.

**Choice of remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000).  The Ninth Circuit has held that

in the unusual case in which it is clear from the record that

14

the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate.

Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2000).

On remand, the vocational expert testified in response to hypothetical questions posed by the ALJ, but for the reasons already described, those questions did not include the specific mental limitations that the ALJ was directed to reconsider on remand. Plaintiff's counsel also asked the vocational expert hypothetical questions using a definition of "moderate" he proposed in a lengthy, cogent written submission to the ALJ [AR 853-874] and by way of oral argument during the hearing. [See AR 926-932]. Citing the Commissioner's regulations, policy statements, and case law, plaintiff's counsel argued that a "moderate" impairment "causes a significant limitation that impacts the ability to perform substantial gainful activity on a sustained basis." [AR 873, 927]. Referring to a bell curve distribution, counsel argued that if "moderate" had to be quantified, it would represent a level of functioning that is at least one standard deviation below the mean, and no more than two standard deviations below the mean. [AR 872-873]. In more general terms, counsel described that level of functioning as "below average" in the affected areas on a consistent, observable basis. [AR 940-941]. He contended that a moderate limitation would not qualify as significant unless it was understood to be a "chronic" degradation in functioning that is obvious to coworkers, supervisors, and peers. [AR 874]. Counsel also contended if the "moderate" (that is, significant, chronic, and obvious) limitation

impacts a "core job function," also described as a "bona fide occupational qualification," the moderate limitation precludes performance of that job, but that if the moderate limitation affects an "ancillary or unimportant" job function, the affected person could still perform that job. [See AR 928-929]. The ALJ told counsel that he "agree[d] with a lot of what you said" [AR 931], but subsequently did an abrupt about-face in his June 2007 decision by rejecting all of counsel's analysis as to how "moderate" should be defined and disavowing use of that term altogether, despite the clear instructions in the remand order.

During the hearing on remand, plaintiff's counsel asked the vocational expert to assume a hypothetical individual who could perform sedentary, "simple" unskilled work (defined by counsel as an specific vocational preparation of 2 [6] and reasoning level 1[7]). Additionally, the

---

[6]     The term "specific vocational preparation" ("SVP") is a term of art used in the Dictionary of Occupational Titles to classify "how long it generally takes to learn the job." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990). Unskilled jobs are those that can usually be learned in 30 days or less, corresponding to an SVP level of 1 ("[s]hort demonstration only") or 2 ("[a]nything beyond short demonstration up to and including 1 month"). Dictionary of Occupational Titles, Appendix C, "Components of the Definition Trailer" (4th ed. 1991); see Terry, 903 F.2d at 1276 (holding that unskilled jobs are those that have an SVP of 30 days or less); SSR 83-10, WL 31251, at *7 ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.").

[7]     Dictionary of Occupational Titles job classifications include a "General Educational Development" ("GED") component comprising three scales: Reasoning Development, Math Development, and Language Development. The GED reasoning, math, and language development scales range from Level 1 (low) to Level 6 (high). Level 1 reasoning is defined as the ability to

    [a]pply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from

---

hypothetical person had a moderate limitation in maintaining persistence and pace, two abilities the vocational expert classified as important functions in simple unskilled work. [AR 937-940]. Plaintiff's counsel defined moderate to mean that the individual was consistently below average in the ability to maintain persistence and pace. [AR 940-941]. Asked whether such a person could sustain employment over a long period, the vocational expert testified that the answer depended in part on economic conditions and the person's relationship with the employer, but that such a person would be "less likely to sustain employment." [AR 941]. Plaintiff's counsel then asked the vocational expert to assume that the hypothetical person also was below average in the ability to relate to co-workers, supervisors, and peers. [AR 941]. The vocational expert testified that such a person "would be a very good candidate for not being able to maintain their employment." [AR 941]. Asked if the hypothetical person, in addition, was below average in the ability to respond appropriately to changes in the work setting and pressures of the work setting, and if those limitations were cumulative, the vocational expert testified "it would make it more likely to [cause] unemployment." [AR 942].

The court is mindful that plaintiff previously was adjudicated disabled. His current application was filed in January 2003, roughly six years ago. He already has had two hearings before an ALJ regarding his present application and has filed two actions for judicial review. The record is voluminous. Plaintiff has suffered long delays in the resolution of his benefits application due to legal errors in the

these situations encountered on the job.

_Dictionary of Occupational Titles_, Appendix C, Components of the Definition Trailer (4th ed. rev.1991).

17

Commissioner's adjudication of his case. On remand, plaintiff's counsel presented the ALJ with well-grounded arguments about how to clarify the definition of "moderate" as instructed in the remand order. After appearing receptive to those arguments, the ALJ adopted an approach that was inconsistent with the letter and the spirit of the remand order.

In the circumstances of this case, the vocational expert's testimony in response to plaintiff's counsel's hypothetical questions on remand is adequate to support the conclusion that with the severe impairments and mental RFC found by the ALJ in his October 2004 decision, including all of the moderate mental functional limitations he imposed, plaintiff cannot perform his past relevant work or other alternative unskilled work on a sustained basis. See SSR 96-8p, 1996 WL 374184, at *1 ("Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). "In this case, remanding for further administrative proceedings would serve no useful purpose and would unnecessarily extend [plaintiff's] long wait for benefits." Benecke, 379 F.3d at 595. Moreover, courts have found it appropriate to award benefits when an ALJ has exceeded the scope of or otherwise violated a district court's remand order. See Ischay, 383 F.Supp.2d at 1223 (reversing for an immediate award of benefits where the ALJ exceeded the scope of the remand order); Holst v. Bowen, 637 F.Supp. 145, 146-147 (E.D. Wash. 1986)(reversing for the payment of benefits where the ALJ "refused to abide by" the instructions in the district court's remand order). Accordingly, plaintiff is disabled and entitled to benefits.

**Conclusion**

The Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is reversed, and this case is remanded to the Commissioner for an award of benefits consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: January 6, 2009

_____
ANDREW J. WISTRICH
United States Magistrate Judge

19